# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RYAN KING,

      Plaintiff,

  v.                                                                Case No. 18-CV-744

CHRISTOPHER SCHMALING,
CO GONZALES,
CAPTAIN WEARING,
JOHN DOE DEPUTY 1,
JOHN DOE DEPUTY 2,
JOHN DOE CORRECTIONAL OFFICER 1,
JOHN DOE CORRECTIONAL OFFICER 2,
JOHN DOE CORRECTIONAL OFFICER 3,
JOHN DOE NURSE 1,
JANE DOE HEAD NURSE 1,
JANE DOE NURSE 4,
JANE DOE NURSE 5,
JOHN DOE EARPLUG MAKER,
WHEATON FRANCISCAN HOSPITAL,
JOHN DOE DOCTOR 1, at Wheaton Franciscan
JOHN DOE DOCTOR 2, at Wheaton Franciscan,
JANE DOE NURSE 2, at Wheaton Franciscan, AND
JANE DOE NURSE 3, at Wheaton Franciscan,

      Defendants.

## SCREENING ORDER

The plaintiff, Ryan King, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights. This decision resolves Mr. King's motion for leave to proceed without prepayment of the filing fee and screens his complaint.

This case is currently assigned to U.S. Magistrate Judge David E. Jones; however, because not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was

randomly referred to a U.S. District Court judge for the limited purpose of screening the complaint. The case will be returned to Judge Jones for further proceedings after entry of this order.

## MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. § 1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. § 1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow him to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

The court ordered the plaintiff to pay an initial partial filing fee of $39.54 and the plaintiff has paid that fee. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## SCREENING THE COMPLAINT

### A. Federal Screening Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**B.** **The Plaintiff's Allegations**

The plaintiff was confined at the Racine County Jail at all times relevant. He alleges that an earplug was stuck in his ear for five days which caused him significant pain as well as damage to his ear.

Specifically, the plaintiff alleges that after 9:00 p.m. lockdown on May 13, 2015, he placed earplugs in his ears that he bought from the jail's commissary for sleep noise reduction. The next morning when the plaintiff went to remove the earplugs, the left earplug broke in half leaving the other half lodged in his ear. The plaintiff alerted defendant John Doe Nurse that the earplug had broken off in his ear. Defendant John Doe Nurse said he would call the plaintiff to the nurse's station to see if he could remove it.

Later that morning, defendant John Doe Nurse called the plaintiff to the nurse's station and tried to remove the earplug with a tweezers which caused pain in the plaintiff's left ear. Defendant John Doe Nurse was unable to remove the earplug and his attempts resulted in pushing the earplug further into the plaintiff's ear which caused more pain. Defendant John Doe Nurse said he would report the incident to defendant Jane Doe Head Nurse and that she might have longer tweezers to remove the earplugs. He then sent the plaintiff back to his cell.

About an hour later, defendant Jane Doe Head Nurse called the plaintiff to the nurse's station, took his vitals, and tried several times to remove the earplug. Each time she tried it caused a jolting pain in the plaintiff's ear and she was not able to remove the earplug. The plaintiff's ear started bleeding and the earplug went further down into his ear canal which caused more pain. Defendant Jane Doe Head Nurse said that the earplug had to be removed or it could damage his ear, so she had him transferred to the Wheaton Franciscan Emergency Room. She had him sent back to his cell in "grave pain" and did not give him pain medication because she did not know the treatment he would receive at the hospital.

Later that day, defendants John Doe Deputies 1 and 2 escorted the plaintiff to the Wheaton Franciscan Emergency Room. Once there, defendant Jane Doe Nurse 2 took his vitals. Then defendants John Doe Doctors 1 and 2 tried to remove the earplug with several different tools. Each time they tried, it caused the plaintiff more pain and bleeding, and it caused the broken earplug to go further into his ear. Defendant John Doe Doctor 2 said that he would set up an appointment with an ear, nose, and throat (ENT) specialist to remove the earplug. He also stated that he would write the appointment and pain medication for the plaintiff's ear on the medical release records. While the

plaintiff and the two defendant John Doe Deputies waited for the medical release records, defendant Jane Doe Nurse 3 gave the plaintiff some pain medication.

Defendant Jane Doe Nurse 2 brought the medical release records and gave them to defendant John Doe Deputy 1, who read the release records which erroneously stated that the emergency room had successfully removed the broken earplug from the plaintiff's ear. After hearing this, the plaintiff stated that the release records were wrong and needed to be changed before they left the emergency room. But defendant John Doe Deputy 1 said that he did not have time to get the records changed due to a personal matter (a family counseling appointment), but that he would inform the jail about the incorrect medical release records. The plaintiff was then escorted back to the jail.

The next morning (May 15, 2015) at 6:00 a.m., the plaintiff went to his cell door to get medication from defendant Jane Doe Nurse 4 but was told there was no medication for him because the broken earplug had been removed. The plaintiff told her that the earplug had not been removed and he told her to take a look, but she refused. The plaintiff told her about the medical release records being wrong. Then defendant John Doe CO 1 told the plaintiff that if he did not leave from the front of the door he would place the plaintiff in the "hole," so the plaintiff returned to his cell in pain.

At 8:00 a.m., the plaintiff filled out an Inmate Request/Complaint to defendant Sgt. Gonzales (or the sergeant on duty) to inform him or her that the medical record was wrong and that he was supposed to see an ENT specialist to have the earplug removed. The plaintiff did not receive a response to his request and was forced to go all day without medication.

The next morning (May 16) at 3:00 a.m., the plaintiff filled out an Inmate Request for Medical Attention complaining about the pain in his ear and face area. He also explained how the

incorrect medical release records were sent from the emergency room and how defendant John Doe Deputy 1 was supposed to explain the situation to jail staff. At 6:00 a.m., the plaintiff went to the door to get help for his ear pain. Defendant Jane Doe Nurse 5 refused to give him pain medication or any medical attention. She said she would check with the hospital to see if they sent back incorrect information from the plaintiff's visit. But she did not contact the plaintiff before her shift change.

That same day, the plaintiff submitted another Inmate Request/Complaint to defendant Sgt. Gonzales. He explained how defendant Jane Doe Nurse 5 said she would check back with the plaintiff after checking with the emergency room about the medical release records. Later that day, at 4:15 p.m., the plaintiff filled out another Inmate Request for Medical Attention explaining the pain he had in his face and ear. He also submitted another Inmate Request/Complaint that day, to defendant Captain Wearing, explaining that he had written to Sgt. Gonzales, that the nurses had refused him service all day, and that he was in a lot of pain from having the earplug in his ear. The plaintiff states that he also spoke to defendant John Doe CO 2 about seeing a nurse and about his pain. He told the plaintiff that a nurse was coming, but one never came.

On May 17, 2015, at 6:15 a.m., the plaintiff went to "the door" (presumably, the door to get medication) and explained to defendant Jane Doe Nurse 4 that he was in pain and how the medical release form was incorrect. He asked her to look in his ear, but she refused to assist him or give him pain medication. At 7:30 a.m., the plaintiff filled out another Inmate Request for Medical Attention in which he explained that he had asked for pain medication for three days and did not receive any, and that his face and ear were getting puffy and might be infected.

On May 18, 2015, the plaintiff went to the door and asked defendant Jane Doe Nurse 5 for medication and treatment but defendant Jane Doe Nurse 4 refused. He submitted another request for medical attention in which he wrote that he thought he was being denied medical attention because of his criminal charges.

Later that day, defendant Jane Doe Nurse (it is unclear which one) came to see the plaintiff at which time she took his blood pressure, recorded the tenderness on his face, and issued him pain medication for three days. The plaintiff was then sent to the ENT specialist for the removal of the broken earplug and it was removed.

The plaintiff states that he has hearing difficulties with his left ear due to the damage he had done to his ear by the misrepresentation of the earplugs being sold as "sleep earplugs," the ineffective removal of the broken earplug by John Doe Nurse and Jane Doe Nurse, the malpractice by the Wheaton Franciscan Emergency Room doctors and nurse by neglecting to fill out the correct diagnostics on the medical release form, the John Doe Deputies' intentional refusal to alert the Wheaton Franciscan nurses that the medical release records were incorrect, the jail nurses' refusal to treat the ailment, the officers' ignoring his needs, the jail's misrepresentation and sale of a safety product, and the maker of the earplug for selling defective earplugs.

For relief, the plaintiff seeks compensatory and punitive damages.

**C.    The Court's Analysis**

    **1.    Constitutional Claims**

The plaintiff's claim is predicated on the principle adopted by the Supreme Court in *Estelle v. Gamble* that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97, 104

(1976). The principle derives from the fact that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* at 103.

To demonstrate deliberate indifference, a plaintiff must show "actual knowledge by the officials and guards of the existence of the substantial risk and that the officials had considered the possibility that the risk could cause serious harm." *Washington v. LaPorte Cty. Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Stated another way, a plaintiff must demonstrate that he had an objectively serious medical condition and that the defendants were subjectively aware of and consciously disregarded that condition. *Farmer*, 511 U.S. at 837. A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citations omitted). Severe pain is considered a serious medical need, which, if untreated, may give rise to an Eighth Amendment claim. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain."). Ordinary negligence by prison officials, however, is not enough to demonstrate an Eighth Amendment violation. *Washington*, 306 F.3d at 518. Moreover, it is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995).

In this case, the plaintiff's medical need—a foreign object stuck in his ear—is the type of medical need that is obviously serious. *See Roy*, 631 F.3d at 857. Thus, the court turns to whether the plaintiff has sufficiently alleged that the defendants acted with deliberate indifference.

The plaintiff's allegations against defendants Jane Doe Nurse 4, Jane Doe Nurse 5, CO Gonzales, and Captain Wearing state an Eighth Amendment claim. With regard to the nurses, he alleges that he told them that the earplug was still stuck in his ear, that he was in pain, and that an error had been made in his medical records, but they refused to check his ear and refused to treat him. Likewise, the plaintiff alleges that he notified both CO Gonzales and Captain Wearing of the situation and that they did not respond to him. This arguably states a claim. *See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 993–94 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")).

In addition, the plaintiff may proceed against defendant John Doe Deputy 1 at this time. He alleges that defendant John Doe Deputy 1 refused to change the error in the medical release records before they left the emergency room due to a personal matter, but that he would let jail staff know about the error. At this stage, an inference may be made that defendant John Doe Deputy 1 did not tell jail staff about the error because all jail staff members whom the plaintiff encountered when he returned to the jail refused to treat him and referenced the erroneous medical release records that stated that the earplug had been removed.

On the other hand, the plaintiff may not proceed on constitutional claims against any of the remaining defendants because he does not allege that any of them acted with deliberate indifference. The plaintiff alleges only that defendant John Doe Nurse 1 unsuccessfully tried to remove the earplug on May 14, 2015, and then alerted defendant Jane Doe Head Nurse. The plaintiff alleges that when

she was unable to remove it she had him sent to the emergency room that day and while she allegedly did not give him pain medication, her reasoning was that she did not know how he would be treated in the emergency room. These allegations against John Doe Nurse 1 and Jane Doe Head Nurse show that when they were unable to help the plaintiff, they promptly referred him to someone better equipped to help.

With regard to the defendants Jane Doe Nurses 2 and 3, who were in the emergency room, the plaintiff only alleges that Jane Doe Nurse 2 took his vitals and gave him his release records and that Jane Doe Nurse 3 gave him some pain medication. Likewise, the doctors in the emergency room, defendants John Doe Dr 1 and 2, unsuccessfully tried to remove the earplug. (The plaintiff does allege that defendant John Doe Dr 2 said he was going to refer the plaintiff to the ENT, set up the appointment, and prescribe pain medication. If anything, these allegations against John Doe Dr 2 amount to negligence and will be discussed below.) With regard to defendant John Doe Deputy 2, the plaintiff does not allege deliberate indifference but, rather, only that he escorted the plaintiff to the emergency room. The plaintiff does not allege that defendants John Doe CO 1-3 acted with deliberate indifference. Defendant John Doe CO 1 allegedly told the plaintiff to get away from the door or he would go to the "hole" and John Doe CO 2 allegedly told the plaintiff a nurse was coming but she never came. These sparse allegations do not sufficiently allege deliberate indifference. Finally, the plaintiff cannot proceed against defendant Schmaling because he does not allege that Schmaling had any personal involvement in the complaint's allegations.

   2.  **State Law Claims**

The plaintiff also appears to advance a medical malpractice claim against the emergency room doctors and nurses. "Under Wisconsin law, medical malpractice has the same ingredients as

- 10 -

garden-variety negligence claims: the plaintiff must prove that there was a breach of a duty owed that results in an injury." *Gil v. Reed*, 535 F.3d 551, 557 (7th Cir. 2008) (citing *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860). The plaintiff may proceed on a medical malpractice claim against defendant John Doe Dr 2 because he alleges that the doctor said he was going to write the appointment and pain medication on the release records, which he presumably did not do. He may also proceed on a state law claim against Wheaton Franciscan Hospital, under either the doctrine of *respondeat superior* or apparent authority. *See Pamperin v. Trinity Memorial*, 144 Wis. 2d 188, 198–99, 203, 423 N.W.2d 848 (1988). However, the plaintiff does not allege that any of the other emergency room defendants were negligent in treating the plaintiff.

The plaintiff also purports to state a claim against the maker of the earplugs for selling defective earplugs. Under a strict liability theory, "manufacturers of defective products can be liable for the injuries their products cause, regardless of the care taken by the manufacturer or the foreseeability of the harm[.]" *Godoy ex rel. v. E.I. du Pont de Nemours & Co.*, 2009 WI 78, ¶ 27, 319 Wis. 2d 91, 768 N.W.2d 674. To prevail on a strict liability product liability claim, a plaintiff must demonstrate that: (a) the product is defective because it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings; (b) the defective condition rendered the product unreasonably dangerous to persons or property; (c) the defective condition existed at the time the product left the control of the manufacturer; (d) the product reached the user or consumer without substantial change in the condition in which it was sold; and (e) the defective condition was a cause of the claimant's damages. Wis. Stat. 895.047(1). The plaintiff alleges that he purchased the ear plugs for "sleep noise reduction" and followed the directions in placing them in his ears, but when he awoke and tried to remove them, the left ear plug broke and

became lodged in his ear, requiring an Ear, Nose and Throat Specialist to remove. Construed liberally, the plaintiff states a claim against the manufacturer of the earplugs.

### 3. Summary

In sum, the plaintiff may proceed on Eighth Amendment deliberate indifference to a serious medical needs claims against defendants CO Gonzales, Cpt. Wearing, Jane Doe Nurses 4-5, and John Doe Deputy 1; state law medical malpractice claims against defendants John Doe Dr 2 and Wheaton Franciscan Hospital; and a state law product liability claim against John Doe Earplug Maker. The court will exercise supplemental jurisdiction over the plaintiff's state law claims. See 28 U.S.C. § 1367. The remaining claims and defendants will be dismissed.

The plaintiff will need to use discovery the identify the Doe defendants. After the named defendants have filed an answer to the complaint, the court will issue a Scheduling Order which will provide information about identifying the Doe defendants.

**ORDER**

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*) (ECF No. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon the named defendants pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The

U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

**IT IS ALSO ORDERED** that the named defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from his institution trust account the $310.46 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with the plaintiff's remaining balance to the receiving institution.

**IT IS ALSO ORDERED** that a copy of this order be sent to the officer in charge of the agency where the plaintiff is confined.

**IT IS FURTHER ORDERED** that this case be **RETURNED** to United States Magistrate Judge David E. Jones for further proceedings.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail

documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court further advises the plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this __15th__ day of October, 2018.

                                           s/ William C. Griesbach
                                           William C. Griesbach, Chief Judge
                                           United States District Court - WIED

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.