UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN KING,

        Plaintiff,

        v.                                            Case No. 18-C-744

MELISSA A. GONZALEZ, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Ryan King is representing himself and proceeding on claims based on allegations that Defendants refused to address his complaints of severe ear pain from an earplug lodged in his ear canal. On December 17, 2021, Defendants William Becker, Melissa Gonzalez, Marco Verdiguel, and Douglas Wearing (the Racine Defendants) filed a motion for summary judgment. Dkt. No. 121. That same day, Defendants Cristina DeJesus and Kendra Navarro (the Medical Defendants) also moved for summary judgment. The Court will grant the Racine Defendants' motion as to Gonzalez and Wearing and will deny the motions as to the remaining Defendants.

## BACKGROUND

At the relevant time, King was incarcerated at the Racine County Jail, where Becker, Gonzalez, Verdiguel, and Wearing worked as jail staff and Navarro and DeJesus worked as medical staff. On May 14, 2015, part of an earplug became lodged in King's ear. Medical staff were unable to remove the earplug, so Becker and Verdiguel transported King to the emergency room at Wheaton Franciscan All Saints Hospital. Dkt. No. 163 at ¶¶3-5; Dkt. No. 122 at ¶¶4-6.

Hospital staff were also unable to remove the earplug. According to the Medical Defendants, King was discharged with a report indicating that all foreign bodies had been successfully removed. However, according to the Racine Defendants, King was discharged with instructions to follow up the next day with an ear nose and throat specialist. The instructions further noted that "immediate medical care" should be sought if there was continued pain because that could indicate an infection or that the object had not been removed. King acknowledges that he never possessed the discharge paperwork, but he explains that, before leaving the hospital, Becker read a document out loud to him and Verdiguel that stated that all foreign material had been successfully removed. King states that he told Becker and Verdiguel that was not correct, and while Becker agreed, he said he did not have time to get it changed. Becker then signed the discharge paperwork, and Becker and Verdiguel transported King back to the jail. Dkt. No. 122 at ¶¶8-9 (citing Dkt. No. 124-3 at 7); Dkt. No. 158 at 9; Dkt. No. 163 at ¶2 (citing Dkt. No. 134-7); Dkt. No. 58 at ¶¶28-29.

King states in his amended complaint that, on the morning of May 15, 2015, at about 6 a.m., Navarro refused to provide him with pain medication because she said the earplug had been removed. King asserts that he informed Navarro that the earplug had not been removed, and he asked her to look to confirm, but she refused. King then informed Navarro about the incorrect paperwork. After Navarro left, King wrote to Gonzalez complaining that he needed follow-up care for his ear. He explained that he had been sent to the emergency room the prior day and was told he needed to see the ear nose and throat specialist, but no one had come to take him. Dkt. No. 58 at 6; Dkt. No. 158-1 at 1-2.

King states that, on the morning of Saturday, May 16, 2015, he went to his cell door and spoke to DeJesus. He asserts that he explained the discharge report was incorrect. According to

2

King, DeJesus refused to provide him with any pain medication, but she told him she would check into his claim that the discharge papers were incorrect. King wrote Gonzalez again, stating that the nurse had refused to see him. He again explained that the paperwork from the emergency room was wrong. King also wrote to Wearing on May 16, explaining that the nurses were ignoring his written and oral complaints that he was in pain and that the hospital paperwork was wrong. Dkt. No. 58 at 7; Dkt. No. 158-1 at 1-2.

Also on May 16, 2015, Wheaton Franciscan Healthcare faxed records regarding King's May 14 hospital visit to the jail. The records noted the primary diagnosis as "[r]etained foreign body of middle year." The disposition notes included arranging a follow-up appointment with the ear nose and throat specialist on May 15. Dkt. No. 124-4 at 4. It is not clear from the record who, if anyone, reviewed the faxed documents.

From May 16 to May 18, 2015, King filed five requests for medical attention complaining that the hospital documentation was incorrect, the earplug was still lodged in his ear, and he was experiencing severe pain and puffiness. On May 18, 2015, King was seen by medical staff, who referred him to the ear nose and throat specialist and provided him with over-the-counter pain medication. The next day, on May 19, King had an appointment with the ear nose and throat specialist, and the remaining part of the earplug was removed from his ear. Dkt. No. 163 at ¶¶7-8; Dkt. No. 122 at ¶¶23-24.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson*

3

*v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

King asserts that Defendants' responses (or lack thereof) to his complaints that the earplug remained lodged in his ear and was causing severe pain violated his constitutional rights. Both the Medical Defendants and Racine Defendants dispute King's claims, but they disagree about the applicable standard. The Medical Defendants assert that King's claims are subject to the Eighth Amendment's deliberate indifference standard, which applies to sentenced prisoners, while the Racine Defendants assert that they are subject to the Fourteenth Amendment's objective unreasonableness standard, which applies to pretrial detainees.

Which standard applies is determined by King's incarceration status at the time of the incident. At the relevant time, King was neither a sentenced prisoner nor a pretrial detainee. While he had already pleaded no contest to one charge and guilty to another charge, he had not been sentenced and a judgment of conviction had not been entered. Dkt. No. 122 at ¶¶2-3. The Seventh Circuit has explained that the status of an inmate who finds himself "in this purgatory within our

4

criminal justice system" is "analogous to that of a pretrial detainee, meaning that the basis for his § 1983 action [is] the Fourteenth Amendment Due Process Clause." *Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009).

Thus, for King's claims to survive summary judgment, he must present evidence that having an earplug lodged in his ear was a serious medical condition—something Defendants do not dispute—and that Defendants' responses (or lack thereof) to his condition were objectively unreasonable. *See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019). Unlike the more demanding "deliberate indifference" standard under the Eighth Amendment, "[t]his standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively . . . whether the response was reasonable." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). Accordingly, for his claims to survive, King must present evidence from which a jury could reasonably conclude that Defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. *Miranda v. County of Lake*, 900 F.3d 335, 354 (7th Cir. 2018).

1. **Becker and Verdiguel**

King asserts that it was objectively unreasonable for Becker and Verdiguel to return him to the jail without correcting discharge paperwork that they knew to be wrong. He explains that, because the discharge report incorrectly stated that the earplug had been removed, he was forced to wait multiple days in severe pain before his condition was resolved. Becker and Verdiguel dispute King's claims, explaining that the discharge *instructions* indicated that follow up with an ear nose and throat specialist was required. They assert it was reasonable for them to rely on the medical providers to follow the instructions. Becker and Verdiguel also highlight that King's

5

condition was resolved five days later, and they argue that "[t]his short delay does not rise to the level necessary to implicate constitutional violations . . . ." Dkt. No. 123 at 10.

Becker and Verdiguel have no specific recollection of what occurred that day, but a jury that believes King's version could reasonably conclude that their decision to not correct the discharge report or alert the jail's medical staff that the report was incorrect was objectively unreasonable. Becker and Verdiguel highlight the discharge *instructions* which noted the need to follow up with a specialist, but they completely ignore the discharge *report* which indicated King's issue had been resolved. The urgency and significance of the instructions were undercut, if not negated, by the pronouncement in the report that the earplug had been successfully removed. Given that the only reason King was taken to the emergency room was to remove the earplug, a jury could conclude that it was unreasonable for Becker and Verdiguel to allow King to return to the jail with paperwork stating his problem had been resolved when they knew that it had not been.

Becker and Verdiguel point out that King's assertion that they refused to fix the paperwork because one of them had to attend a counseling session cannot be correct. They note that neither had a counseling session that day, so King is wrong about their so-called motive for refusing to make the correction. This error may be relevant to weighing King's credibility, but credibility is not at issue on summary judgment. And, in any event, *why* Becker and Verdiguel refused to correct the paperwork is not a material fact; the salient issue is King's assertion that Becker and Verdiguel knew the paperwork was incorrect and did nothing to correct it or alert jail medical staff.

Finally, a jury could reasonably conclude that King was harmed by the "short delay" before the earplug was removed. A delay is constitutionally significant if it "exacerbates the injury or unnecessarily prolongs an inmate's pain, particularly if . . . the pain is treatable." *Hill v. Meyer*, No. 21-2884, 2022 WL 1078871, at *3 (7th Cir. April 11, 2022). The length of delay that is

6

permissible "depends on the severity of the condition and the ease of providing treatment." *Id.* Medical staff had decided that King's condition was so significant that it warranted a trip to the emergency room. Unable to resolve the issue, emergency staff instructed that a specialist be consulted first thing the next morning. Further, King complained in increasingly desperate tones about his severe pain to the Medical Defendants, health services, and correctional staff, but his complaints were ignored because the report incorrectly indicated the earplug had been removed. Once action was finally taken, an appointment was scheduled for the next day, and King's issue was quickly resolved at that appointment. Thus, a jury could reasonably conclude that King's condition was both severe and easily resolved, meaning he was harmed by the delay because it unnecessarily prolonged his pain. Becker and Verdiguel are not entitled to summary judgment.

2. **Wearing and Gonzalez**

King asserts that it was objectively unreasonable for Wearing and Gonzalez not to intervene immediately when he informed them via written complaint that medical staff were ignoring his assertions that the earplug was still lodged in his ear. Unlike Becker and Verdiguel, Wearing and Gonzalez did not have personal knowledge that the discharge report was incorrect. King informed them that was the case, but he also informed them that he had given the same information to medical staff and that at least one nurse had told him she would follow up. As non-medical staff, Wearing and Gonzalez were entitled to rely on the expertise of medical personnel and to believe that King was in capable hands. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). As such, even if Gonzalez and Wearing delayed forwarding King's complaints to medical staff, no jury could reasonably conclude that King suffered any injury as a result of that delay because medical staff already knew about and were addressing his complaints. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (to succeed under §1983, a plaintiff must not only establish a

violation "but also that the violation *caused* the plaintiff injury or damages"). Wearing and Gonzalez are entitled to summary judgment.

### 3. Navarro and DeJesus

King asserts that it was objectively unreasonable for Navarro and DeJesus to ignore his repeated assertions that the earplug was still lodged in his ear, that the discharge paperwork was incorrect, and that he was in severe pain. Navarro and DeJesus assert that they were entitled to rely on the discharge report stating that the earplug had been removed and, in any event, they were not authorized to examine King or prescribe pain medication.

According to King, he informed Navarro at 6 a.m. on the day after being discharged that he was in pain. He states that Navarro told him he could not have pain medication because the discharge report stated that the earplug had been removed. King informed her the report was wrong and that he was in severe pain and that the hospital had ordered he be seen by a specialist that day. Navarro argues she was entitled to rely on the discharge *report*, but she fails to acknowledge the discharge *instructions* that stated a specialist should be contacted first thing that morning. Given that the instructions conflicted with the report and that King insisted the report was wrong and that he was in pain, a jury could conclude that it was objectively unreasonable for her not to investigate whether King needed to be sent to the specialist that day or whether pain medication was appropriate.

As to DeJesus, she apparently informed King that she would follow up with the hospital regarding the discharge report. The hospital faxed records to the jail on Saturday, suggesting that she did in fact follow up, but nothing in the record suggests that she or Navarro took any action once the records arrived, despite the records noting that a follow-up with a specialist was required because a foreign body was retained in the ear. Navarro and DeJesus assert that they did not have

8

Case 2:18-cv-00744-WCG   Filed 07/20/22   Page 8 of 10   Document 165

authority to examine King or prescribe medication, Dkt. No. 135 at ¶9, but this does not explain why they did not contact a provider who *could* prescribe pain medication or schedule an appointment with the specialist to remove the earplug. King repeatedly complained with increasing desperation that he was in severe pain, yet even after having taken steps to confirm that the earplug remained lodged in King's ear, Navarro and DeJesus apparently did nothing to escalate his complaints to a provider who could help him. *See, e.g., Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition"). Based on this record, a jury could reasonably conclude that Navarro and DeJesus' inaction, which unnecessarily prolonged King's severe pain, was objectively unreasonable, so they are not entitled to summary judgment.

Finally, Navarro and DeJesus assert that the Court should not consider King's response materials, which arrived one day after the deadline, and should grant their motion as a sanction for his failure to comply with the Court's order. The Court will deny this request. King's documents are dated two days before the deadline, suggesting he gave them to prison officials prior to the deadline. As the Seventh Circuit has explained, "a pro se prisoner's legal documents are considered filed on the day that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded." *Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015). The Court finds that King timely filed his materials, and even if he did not, the Court will excuse him missing the deadline by a single day.

King's claims against Becker, Verdiguel, Navarro, and DeJesus will proceed to trial. Given the complexity of trying a case before a jury, including offering a coherent opening statement and

9

closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court concludes that King lacks the capacity to represent himself in the next stage of litigation. Accordingly, the Court will make efforts to recruit a volunteer lawyer to represent him.

The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages King to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The Court will promptly notify King in the event a lawyer volunteers to represent him. In the meantime, the Court encourages the parties to explore whether settlement is possible.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Racine Defendants' motion for summary judgment (Dkt. No. 121) is **GRANTED** as to Wearing and Gonzalez and **DENIED** as to Becker and Verdiguel, and that the Medical Defendants' motion for summary judgment (Dkt. No. 132) is **DENIED**.

Dated at Green Bay, Wisconsin this 20th day of July, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge